Good morning, ladies and gentlemen. Our first case for argument this morning is K.F.C. v. Snap. Mr. Sigman. Thank you, Your Honor, and may it please the Court. My name is Mark Sigman, and I represent the plaintiff, Pellant. In this case, defendant Snap has admitted that its app is bad for children. It's admitted that it intends not to enter into contracts with children. And it has admitted that its terms of service explicitly did not make offers to children. Yet despite all of that, Snap contends that it has actually formed a contract with an 11-year-old child in this case for an app that's bad for that child. Snap did not form that contract for three different reasons, and this Court should reverse for any or all of those. First, I think it's undisputed that issues of formation are for the Court and not the arbitrator. Everyone agrees on that, and so I won't belabor that. Let me move right into the first argument, which is no offer and no acceptance. Offer and acceptance, as an initial matter, are fundamental requirements of contract law that go to formation. Snap doesn't argue that that issue doesn't go to formation, and so I won't belabor that either. And so when it comes to the lack of offer and acceptance here, the only real issue is that there was no offer and there was no acceptance. Mr. Sigman, I think the real issue is waiver here. Can you address that? Certainly, Your Honor. So in our brief, we explicitly raised the issue that formation goes – that the issue of a contract's existence, formation, is an issue for the Court and not the arbitrator. And then later in the brief, we argued – we stated what the exact elements of formation of a contract are, and then we noted that that includes offer and acceptance. That's enough? I think that is enough. The question is the level of abstraction. What about that would have drawn your current argument to the attention of the district judge? Fair question, Your Honor. To me, the issue is at what level of abstraction must an argument need to be made. And my argument is that once we argued that formation was an issue for the Court, and then we noted the four elements for what needs to exist for a contract to be formed, and then noted that offer and acceptance was one of those, that that was a sufficiently specific argument. How would that put the Court on notice, though? And I believe you made that argument under a section of your brief that talked about being unenforceable as a matter of public policy. But even putting that aside, how would just laying out what the elements are draw the Court's attention or your opposing counsel's attention to an argument specific to the offer here? I understand the question, Your Honor. It is correct that there was no section of the brief entitled, there was no offer here, or that my client was not within the scope of the offerees. I understand that. My argument is simply that reciting the elements of a breach of contract, including offer and acceptance. But my question wasn't just because it's under a public policy section or just because you don't have a heading that says that. My question was in response to your statement that you've listed what the elements are and said, essentially listed what the elements are. How can that put everybody on notice that you are specifically challenging the offer for the reason that you're arguing before us today? Your Honor, I can't offer any argument to that other than what I've already said, which is that the elements are there. And I think that it's reasonable for a court and for anyone else to realize that once you cite the element, once you say that no contract was formed and you cite the elements, that the elements need to be there. And, Your Honor, I fully realize that statements made in an oral argument later cannot by themselves preserve an argument. But I do think it's pretty much undisputed here that at the oral argument on the motion, which was a long time before the order came down, the argument was made very crystal clear there. Well, you made the argument, but you didn't cite any case law. And we have repeatedly said arguments raised for the first time during oral argument are waived. So I don't think that saves you. I understand, Your Honor. And that's why I'm not relying only on the statements of oral argument, but rather those are sort of confirmatory. As far as the lack of citation, it is true that no case was cited at oral argument. But as I argued in the brief, you know, the issue at hand is Hornbook law of offering acceptance. And so respectfully, I would suggest simply that no case needed to be cited specifically for that proposition. Let me raise with you what I see as the critical issue in this case. It's whether minority is a problem with formation within the scope of AT&T mobility or is a defense that the youngster can urge. Which is the right way to characterize it? Your Honor, I think it's clearly an issue of formation for several reasons. First off, the Supreme Court in the Buckeye case noted two things that clearly go to formation, whether you lack the authority to commit the principle, and then whether the signer lacked the mental capacity to consent. There was a statement, as I noted, deals with capacity. Neither of those deals with minority. Let me tell you two things that seem to me important. One is I think it's agreed that a minor can ratify a contract. And that sounds like it is not a problem with formation. Problem with formation, there is no contract. You can't ratify something that doesn't exist, something that's void. So if the minor can ratify the contract, doesn't that imply that it exists? The other thing that comes to mind is the fact that the Sixth Circuit last month decided a case that seems to be absolutely identical to this one and held that the defense of minority is for the arbitrator. Your Honor, thank you. Let me address both of those. First, about ratification. I will note that there was a statement that discusses capacity of mental infirmity and due to age in the same exact section. So the issue of capacity goes to both age and mental capacity to contract mental infirmity, or what you call it. And I don't know of any case law, other than the Sixth Circuit case Your Honor cited, or I don't know of any principled reason why you would treat those differently. Why capacity due to age versus capacity due to mental infirmity would be treated differently. Notably, the two cases I cited, Wilhelm and Gregg, they both hold exactly that. And to Your Honor's point, Judge Easterbrook, about ratification, in both of those cases, those were issues of voidable contracts and not void, and ratification existed in those cases. In both Wilhelm and Gregg, those were cases about mental infirmity. But in both of those cases, under state law, Illinois law, and California law, contracts were void. Counsel, I know you're citing those cases. They are decisions of district judges, and in the Court of Appeals, a decision of a district judge, however wise, has no presidential authority. Right? And they are decisions of federal judges rather than of state judges. Do we have decisions by, say, a state appellate court? I might give a lot of weight to that. Your Honor, I completely understand your position. I am not aware of any state appellate court. I hope you understand what the problem with citing a district judge's opinion is. We're reviewing a district judge's opinion. I don't see any reason why I should give greater weight to some different district judge than I am to the district judge whose opinion we're reviewing. If you have an appellate opinion in Illinois or an appellate opinion by a federal court of appeals, I can see why I would give greater weight to that. I was looking for that and didn't see that in your brief. Certainly, Your Honor, and you didn't see it in my brief because I am not aware of any case like that. Except the Sixth Circuit case, Stock X, which was decided a month ago and is 180 degrees adverse to your position. I understand, Your Honor. I am not aware of that case. And if it is 180 degrees against my position, then I would respectfully suggest that this court reach a different result than its sister circuit. As far as citing a district court, again, I understand that's merely persuasive. I would simply cite this court's own case and the Geneva case which cited Buckeye. And then Buckeye, of course, mentions issue of capacity. And, Your Honor, I understand that incapacity due to age is not technically the same thing as incapacity due to mental infirmity. My proposition is that I don't see a reason to treat those differently. And frankly, I can't wait to read that Sixth Circuit case to see if that court makes that distinction. And if so, how it does make that distinction. Because, as I noted, I don't know of any principled reason to treat them differently. They're both issues of capacity, and they're literally in the same section of the restatement. I mean, there's a bullet point list of four numbered reasons why someone can have lack of capacity. One is age, and then the very next one, I think, is being mentally infirm. I mean, frankly, the law has always treated age as essentially like a mental infirmity, for lack of a better word. You know, children can't contract because they don't have the mental capacity, just like some adults. But it turns out that children can contract. That's what it means to say the child can ratify the contract. Yes, they can, but they can also get out of it by disaffirming. So they have the choice to disaffirm or ratify. They can exercise that choice while they are still minors. That's, you know, that's my problem. It makes it hard to say the contract was void if it can be ratified. I'm sorry, go ahead and answer Judge Easterbrook's question. I was just going to say I understand that position, and I would simply rely on the persuasive cases, merely persuasive cases that say that the mere fact that a contract is voidable and can be ratified later or disaffirmed. Do you agree that the issue of whether or not the minor disaffirmed here is one as to enforceability rather than formation? No, my argument is that the lack of capacity is an issue of formation and not enforceability. But the issue of disaffirming, are you lumping that together with the issue of whether or not a minor can contract in the first instance? Because disaffirmment seems to be a separate issue than entering it in the first place. And that's a fair point, Your Honor. I would say that it's either or both, either the issue of formation and either the issue of lack of capacity as formation and then disaffirmance later, that could be an issue that goes to the arbitrator because it's mere enforceability. But I think the better position is that both issues are issues of formation. The issue is was a contract formed, slash, was a contract later disaffirmed, both of which are issues that ought to go to the court and not to the arbitrator. So I think that the better position is that both issues are issues of formation. You could call it formation and whether the contract remains formed. Your Honors, I'm down to two and a half minutes. I'd like to regroup that for rebuttal, but I'm happy to answer any other questions right now. Certainly, Mr. Sigman. Thank you. Ms. Harrington. Yes, good morning. May it please the court. My name is Beth Harrington on behalf of Snap Inc. The district court correctly determined this case belongs before an arbitrator, not before the court. Plaintiff is alleged to be a 13-year-old who created her Snapchat account on January 4th, 2019. She appears to enjoy Snapchat very much. According to records before the court, she undisputedly continued to use Snapchat for months after filing this class action lawsuit. And even after Snap moved to compel arbitration. Ms. Harrington, before we go too far down into the merits of the arguments, can I just confirm with you, please, do you agree that even with the delegation clause in the contract, that it's the court's responsibility to decide questions regarding contract formation? I do, Your Honor. Okay. The Janangu v. Questar Capital Corporation case makes that clear, just as far as formation only. Even with the delegation clause? You're not arguing otherwise? I am not. Okay. Thank you. Here, Your Honor, as you pointed out, there is a delegation clause that was included in this particular contract. Here, Snapchat users, in order to create a Snapchat account, a user must first download the app, open it, press the sign-up button. The user is then presented with a screen. To enter their first and last name, click sign up and accept. On that screen, above the button for sign up and accept, is the following statement. By tapping sign up and accept, you acknowledge you've read the privacy policy and agree to the terms of service. As we noted in our papers, since September 2015, all Snap terms of service have contained a virtually identical arbitration agreement. Snap sometimes updates the terms, and when it does, all Snapchat users are given notice and have to expressly accept the updated terms before they can upgrade Snapchat to the latest versions. By agreeing to the terms via this cliff record agreement on at least three separate occasions, plaintiffs agree to the arbitration clause set forth in those terms. The terms tell Snap users not once but twice that any claims or disputes against Snap must be brought in individual arbitration. And the arbitration agreement before the district court incorporated the AAA consumer arbitration rules and also provided the arbitrator will decide the jurisdiction of the arbitrator and the rights and liabilities of any, if you, and Snap. So based on these facts, the district court properly compelled arbitration of plaintiff's claims. That conclusion is supported by plaintiff's concessions. Plaintiff concedes that the contracted issue, Snap's terms, which apply to all Snapchat users, include an arbitration agreement. In her appellate brief, plaintiff specifically concedes that Snap's delegation of arbitrability to the arbitrator is proper. These concessions suffice to end the matter before the court, because while established case law provides it in such circumstances, the court is to only consider questions about the contract's very existence. To Judge St. Eve's point, meaning only whether there is an executed contract. All other questions are reserved for the arbitrator. This case does not involve questions going to the contract's very existence. Case law is clear that given the delegation clause involved, arguments regarding the contract's validity or enforceability are for the arbitrator. First, plaintiff has argued that her contract with Snap isn't enforceable due to her minority status and her alleged disaffirmance of the contract. But such arguments regarding minority status and the effectiveness of her purported disaffirmance of the contract are enforceability questions reserved for the arbitrator. And even if the court was to consider this threshold disaffirmance argument, it would fail. It is undisputed that the plaintiff continued to use Snapchat after supposedly disaffirming her contract. Minors are also not permitted to retain the benefits of an agreement and then disaffirm the portions of the agreement they later find burdensome or irksome. Thus, her disaffirmance was ineffective and she is bound by the terms and the requirement to arbitrate her claims. Plaintiff argues also in her brief that her contract with Snap violates public policy. And just for the record, Snap has not conceded that its Snapchat app is bad for children. It is not, contrary to counsel's representations. But again, that issue about public policy goes to enforceability and not formation. Ms. Herring, the district court didn't address the public policy argument in its opinion. What impact should that have here? The court addressed the primary argument that was raised both in the brief and at the argument about disaffirmance. Your Honor is correct that he did not address specifically the public policy argument separately. But he did address the arbitrability issue, which really encompasses both the disaffirmance as well as the public policy issue. He looked at what the delegation clause was, looked at the fact that the AAA rules were incorporated and decided based on that arbitrability clause that all matters, including disaffirmance, were to go to the arbitrator. So the court here obviously can affirm on any ground, but the court had reached just the decision or reached the primary issue that had been argued by the parties. Here, if the court were to consider the public policy argument, which it should not, given the delegation clause, plaintiff here has not demonstrated any public policy violation in her papers. Nothing in the parties about the party's agreement here or the terms is so capable of causing harm that its enforcement would violate the public interest. And nor does the plaintiff carry her burden here, let alone prove as much. States protect minors by giving them the opportunity to disaffirm contracts in certain circumstances or ratify them, not by making all contracts with minors illegal. And finally, recognizing that the two arguments that she had made at the district court, disaffirmance and public policy, did not go to the issue of contract formation. Plaintiff then here led in her appellate brief with an argument that was waived. She argued SNAP did not offer contracts to minors under 13 and that without an offer, no agreement ever existed here. But in her brief below, plaintiff did not make that argument. And in fact, in before the court, she never has put in evidence that plaintiff was indeed 11 years old when she signed up to use the Snapchat. She notes in her reply brief that the birth date of the plaintiff is not even before the court in evidence. Instead, she briefly mentioned the fact that the plaintiff had been 11 years old for the first time at oral argument before the district court. But cited no supporting facts in the record and certainly no case law in support of her position. And the court should follow the district court in not considering this waived argument. If plaintiff had argued there had been no offering acceptance in her opposition brief below, which she did not, SNAP would have responded by showing that the argument was wrong for several reasons. Agreeing to the terms is a condition of SNAP services. In other words, no one can use Snapchat without first agreeing to the terms. Plaintiff most certainly here used SNAP services. That evidence is in the record. So there was an offering acceptance of the terms. The terms and facts stated on the very first page. These terms do indeed form a legally binding contract between you and SNAP, so please read them carefully. By using Snapchat or any of our other products or services that link to these terms, we refer to these simply as the services, you agree to the terms. Of course, if you don't agree with them, don't use the services. So there was here an offer and an acceptance. And while there is no evidence in the record concerning plaintiff's age is exactly what it is, her counsel argues that she indeed lied about her age and, in fact, used Snapchat despite being younger than 13. If somebody isn't allowed to use a service, however, does not mean that they can misrepresent their qualifications and then use the service without being bound by the clear conditions of those services. So while plaintiff was not supposed to use Snapchat, well, she did. And in doing so, clearly placed herself in the group of people who are bound by the terms. Here, plaintiff can't use now her misrepresentations to SNAP as a ground to avoid her arbitration agreement. The fraud, if any, here comes from plaintiff to SNAP, not the other way around. And as such, plaintiff should not be able to use her own fraudulent misrepresentation as a basis now to avoid her obligations under the contract. Also, the doctrine of equitable estoppel prevents plaintiff from experiencing the benefits of her agreement, which she did by creating an account and using Snapchat to communicate with others on a regular basis and then later avoiding her burdens under the agreement to participate in arbitration based on her own fraud. The doctrine of promissory estoppel should also prevent plaintiff's new argument as well. Under that doctrine, the party cannot make a promise unambiguous in terms, have the promise you reasonably rely on the promise, and then avoid their obligations later. SNAP relied on both plaintiff's representation that she was at least 13 and she would arbitrate all her claims. If SNAP knew that either were not true, they would not have allowed her to use Snapchat. Plaintiff cannot use her own misrepresentation to avoid her promise to arbitrate her claims, especially since she has continued to use Snapchat, not just after when she filed the complaint, but also after SNAP moved to compel arbitration. And finally, and importantly, plaintiff did use Snapchat services as a 13-year-old, as plaintiff has admitted. She conceded that she used Snapchat multiple times in 2021 after she turned 13. Therefore, she manifested her assent to the terms after she turned 13. Use of the services with awareness of the terms from the other party means there's no question that the user should be bound by those terms. Therefore, even under plaintiff's theory that the terms do not include an offer to users under 13, she manifested her assent and ratified her assent to the terms by using the service after she turned 13. The District Court held that the grievance incorporation of the AAA rules into the terms at issue suffices as a delegation provision reserving threshold issues or gateway issues for the arbitrator. Those include both the disaffirmance argument as well as the public policy argument that the plaintiff is making. The court then held that plaintiff's arguments regarding unenforceability of the agreement based on her minority, including issues regarding the effectiveness of her disavowal of the contract, were reserved for the arbitrator. This court, too, should affirm the District Court's correct holding that this case should be an arbitration and not in court. Thank you. Thank you, Ms. Harrington. Anything further, Mr. Sigman? Very briefly, Your Honor, I read the dissent in the StockX case that Your Honor cited. Obviously, there was a dissent there on the very issue at hand. I would urge the court to adopt the reasoning of that dissent. I read what Michigan law appears to be identical to Illinois law, which is Hornbrook law, which is contracts by minors are avoidable but not void. The dissent recognized that fact and held that it didn't matter. It also cited as persuasive authority a Tenth Circuit case about mental capacity. And then the dissent noted that there's absolutely no reason to treat mental capacity differently when it takes the form of infancy versus the form of mental infirmity, which is the exact point that I made. And so I simply would leave the court with I would urge the court to adopt. And I realize, Your Honor, that, of course, that is only persuasive, but it is a published dissent by a Sister Circuit. I would urge the court to adopt the dissent in the Henry StockX case. Opposing counsel made other arguments. I don't think the court wants me to address those now, but they are all addressed in my brief, and I would rely on that. If the board has any questions, I'm happy to address them. Otherwise, I will refer them. Thank you very much. The case is taken under advisement.